# CHARLESTON.

E. S. McVey *v.* Chesapeake & Potomac Telephone Co.

## (No. 399)

Submitted April 26, 1927.   Decided May 3, 1927.

1. STATUTES—*In Construing Statute, Effect Should be Given to Intent of Lawmakers.*

    In construing a statute, effect should be given to the intent of the lawmakers.   (p. 523).

    (Statutes, 36 Cyc. p. 1106.)

2. SAME—*In Construing Statute, Thing Within Intention is Regarded Within Statute, Though Not Within Its Letter.*

    It is a well recognized rule of construction that a thing within the intention is regarded within the statute, though not within the letter.   (p. 523).

    (Statutes, 36 Cyc. p. 1108.)

3. WORKMEN'S COMPENSATION ACT—*Workmen's Compensation Law Must be Liberally Construed.*

    The Workmen's Compensation Law is remedial in its nature, and must be given a liberal construction to accomplish the purpose intended.   (p. 523).

    (Workmen's Compensation Acts, C. J. § 34.)

4. SAME—*Husband's Declaration For Injuries to Infant Wife in Employment is Demurrable, Unless it Alleges Defendant's Election Not to Comply With Compensation Law (Workmen's Compensation Law [Code, c. 15P, § 22]).*

    A common law declaration for damages *per quod consortium amisit,* growing out of personal injuries sustained by plaintiff's infant wife by reason of the alleged negligence of the defendant while she was in its employ as a telephone operator, showing on its face that the defendant was an employer within the meaning of the Workmen's Compensation Law, is demurrable, unless it contains an allegation that the defendant either had not elected to comply with the provisions thereof, or, having so elected, is deprived of the protection thereunder by reason by some default on its part.   (p. 523).

    (Workmen's Compensation Acts, C. J. § 44.)

    (NOTE:   Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Case Certified from Circuit Court, Cabell County.

Action by E. S. McVey against the Chesapeake & Potomac Telephone Company. A demurrer to the declaration was sustained, and the trial court certifies the case.

*Affirmed.*

*John Boman,* for plaintiff.

*Fitzpatrick, Brown & Davis* and *C. W. Strickling,* for defendant.

Woods, Judge:

This is an action of trespass on the case, brought in the circuit court of Cabell county, by which it is sought to recover damages for the injury of plaintiff's wife, on account of the loss of consortium, etc. The plaintiff filed a declaration at common law, alleging that his wife had been injured while in the service of the defendant company as a telephone operator. The defendant demurred to the declaration be· cause the declaration showed on its face that the defendant was an employer within the meaning of the Workmen's Compensation Law, and that a declaration, to be good on demurrer, should allege that the defendant either had not elected to comply with the provisions of that law or that having elected to comply, it was necessary that the declaration state some default on the part of the defendant which would deprive it of the protection of that law. *Byrd, Adm'r.* v. *Sabine Collieries Corp.,* 92 W. Va. 347. The court sustained the demurrer. The plaintiff declined to amend his declaration, taking the position that, even though the defendant had elected to comply with the Workmen's Compensation Law and was in good standing thereunder at the time of the alleged injury to the plaintiff's wife, the supposed right of action at common law of the plaintiff for loss of consortium, etc., was not affected by the provisions of the Workmen's Compensation Law. To test the correctness of the ruling of the lower court upon this proposition the declaration is here for review. Two questions are raised on the certificate: (1) Whether the plaintiff, who is suing for damages *per quod*

*consortium amisit* growing out of the personal injuries sustained by his infant wife by reason of the negligence of the defendant while she was employed as a servant of the defendant, is entitled to his action in this behalf the same as he would have been prior to the year 1913, had his cause of action then accrued, notwithstanding the provisions of chapter 10 of the Acts of the Legislature of 1913, commonly known as the Workmen's Compensation Act, and amendments thereto? And (2) Whether the declaration, and each count thereof, states facts sufficient to constitute a cause of action against the defendant?

A determination of the questions of law rest upon the construction of §22, chapter 15P, Code. This section provides: "Any employer subject to this act who shall elect to pay into the workmen's compensation fund the premiums provided by this act, shall not be liable to respond in damages at common law or by statute for the injury or death of any employee however occuring, after such election and during any period in which such employer shall not be in default in the payment of such premiums and shall have complied fully with all of the provisions of this act; provided, the injured employee has remained in his service with notice that his employer has elected to pay into the workmen's compensation fund the premiums provided by this act. * * *" Our research has not furnished us any case decided by this court, or by any other court in a state with a statute identical to ours, which throws any light upon this subject. Nor has counsel for either side been able to direct our attention to any. We must therefore resort to the wording of the statute and to general well recognized principles of statutory construction.

The obvious purpose of the Legislature in enacting into law the so called "Workmen's Compensation Act" must be borne in mind in a decision of the question involved here. In the construction of such acts, the courts are, of course, guided by the general rules of statutory interpretation. While, generally, statutes in derogation of the common law are given a strict construction, yet the courts have very generally held that a spirit of liberality should characterize the interpreta-

tion of the Workmen's Compensation Laws, for the reason
that it is to be classed as remedial legislation. *State* v. *District Court,* 131 Minn. 352; *Wilson* v. *Dorflinger,* 218 N. Y.
84. The changed social, economic, and governmental conditions and ideals of the time, as well as the problems which
the changes have produced, must also logically enter into the
consideration and become influential factors in the settlement
of problems of construction and interpretation. Courts will
look to the old law, the mischief sought to be abolished, and
the remedies proposed. In this respect it has been said: ''The
conditions giving rise to a law, the faults to be remedied, the
aspirations evidently intended to be efficiently embodied in
the enactment, and the effects and consequences as regards
responding to the prevailing conceptions of the necessities of
public welfare, play an important part in shaping the proper
administration of the legislation. In the aggregate, they
sometimes shed very efficient light in aid of clearing up
obscurities as to the legislative intent. * * * The courts
should fully appreciate that and be imbued with and guided
by the manifest intent of the law to eradicate, utterly, the
injustice to employers and employees, and the public as well,
of the old system, and to substitute in its place an entirely
new one based on the highest conception of man's humanity
to man and obligation to industry upon which all depend;
recognizing the aggregate of its attending accidents as an
element of cost to be liquidated and balanced in money in the
course of consumption—a system dealing with employees, employers, and the public as necessarily mutual participants in
bearing the burdens of such accidents, displacing the one
dealing only with the class of injuries happening through
inadvertent failure, without real moral turpitude, to exercise
average human care, and placing employee and employer,
whose interests are economically the same, in the false position
of adversaries, to the misfortune of both and the public, intensified by opportunity for those concerned as judicial assistants to profit by such misfortunes. Most lamentable it
will be, if this new system—so freighted with hopes for the
minimizing of human burdens and their equitable distribu-

tion—shall not endure and be perfected to the best that human wisdom can attain." *Milwaukee* v. *Miller,* 154 Wis. 652. Keeping before us the foregoing canons of construction and the purposes sought to be accomplished by the law under consideration, let us ascertain the true meaning and intent of our lawmakers, as expressed in the section under review. The first Workmen's Compensation Act was enacted in this state in 1913. See Acts 1913, Ch. 10. This act was later amended by the Legislature. See Acts 1915, Ch. 9. Section 22 of the former act was that quoted hereinbefore. The latter act amended this section by the addition of the following: "The continuation in the service of such employer with such notice shall be deemed a waiver by the employee and by the parents of any minor employee of the right of action as aforesaid, which the employee or his or her parents would otherwise have." What was the intention of the original section? It would seem plain that the Legislature intended to relieve the employer from any and all civil responsibilities at common law, growing out of or in any way connected with the injury or death of an employee in the service of an employer who had fully complied with the requirements of the act. The words used clearly import this. This intention is not only reflected by the meaning of the words actually used, but may be gathered from the necessity and reason of the enactment of the law heretofore stated. It is a well-recognized rule of construction that a thing within the intention is regarded within the statute, though not within the letter. The right of action here—it cannot be gainsaid—does arise out of the injury of the plaintiff's wife, and but for such injury, such right as the plaintiff claims to have would not have existed. Again, we repeat, the statute says in plain terms that for any injury or death of an employee there *"shall be no liability, either at common law or by statute"*, provided the employer is in good standing under the provisions of the act.

But the plaintiff's counsel contends that, even if such a construction be placed upon section 22, as first enacted, as

would destroy the plaintiff's supposed common law right of action, the amendment of 1915 limited the first by specifically mentioning the rights of parents of a minor employee and failing to mention the husband of a wife employee, and sought to apply under that contention the old maxim of statutory construction *"expressio unius est exclusio alterius"*. As we view it, before such maxim could be applied, we must be able to say that it was the legislative intention to curtail the first sentence of section 22 by the second sentence. We are of opinion this cannot be done in view of the entire act. Why this amendment? Under the common law, there was considerable question about whether a minor continued in the service of an employer after notice given by the parent that he would not consent to the employment of the minor, such employment was not unlawful, on the theory that at common law the parent had the right to the custody and control of his minor children and to the benefit of their earning powers until they maintained their majority. This right still exists in this state. So, if a minor employee were in the service of an employer who had come under the protection of the act, and the parent of that employee should give the employer notice that he would not consent to the employment, such employer would probably not be protected by any part of section 22, under the general principle that the Workmen's Compensation Law does not protect an employer where the employment of the injured employee is unlawful. It is reasonable to presume that after the enactment of the first law, this hiatus in the section was recognized, and the Legislature in enacting the amendment in 1915 meant to meet this situation by providing that even if the minor employee continued in the employment of a particular employer who had complied in all respects of the act, without the consent of the parent, such parent of the minor employee would lose whatever right of action he might have. This amendment rather tends to support, than otherwise, the view that it was the intention of the section to relieve the employer from liability, either at common law or by statute, for any injury or death to an employee however occurring. The cases of

*Griffen* v. *Realty Co.,* 27 Ohio Dec. 585, and *King* v. *Viscoloid Co.,* 219 Mass. 422, are cited by counsel for the plaintiff. In the first case, the defendants had failed to comply with the workmen's compensation act. The plaintiff sued the defendant for damages for loss of consortium growing out of the personal injury of her husband sustained while he was in the defendant's employ. Thus, it will be seen that it is not analogous to the case under consideration. The exact question here was not raised. The court there said: ''The act creates no new cause of action for the benefit of the wife, nor does it enlarge any old cause of action which she may have had.'' The *King* Case involved an interpretation of the rights of an employee under the compensation law of the state of Massachusetts. St. 1911, c. 751, as amended. There an employee of a subscriber to the fund shall be held to have waived his right of action at common law to recover damages for personal injuries, if he shall not have given his employer, at the time of his contract of hire, notice in writing, that he claimed such right. This statute is strictly limited in its terms, and the Massachusetts court, in construing it rightfully held that it did not extend to any other right of action than the personal right of action of the injured employee. Mark that this statute does not in any sense of the word destroy the common law right of action, as does our statute, but simply provides that under certain conditions the employee himself, by his own action, may waive his right of action. However, it is significant that Sheldon, J., said in the course of his opinion: ''It was undoubtedly the intention of the Legislature by that statute to take away from the employees who should become subject to its provisions, all other remedies.'' The Massachusetts statute contains no positive provision for the protection of employer, as does ours. Our act contains certain exceptions, i. e., it does not apply to certain employments; it does not apply where the employer has elected not to come within the act; it does not apply in case of defendant's willful wrong. These exceptions strengthen the view that it was the intention of the Legislature to provide, aside from the exceptions, a forum where resort may be had to

settle all claims growing out of injury or death to employees. Holding these views, we affirm the action of the circuit court in sustaining the demurrer to the declaration and to each count thereof. We so certify.

*Affirmed.*